## NEWERF *et al. v.* JEBB *et al.*

*(Supreme Court, General Term, Fifth Department. April 12, 1889.)*

1. MORTGAGES—WHAT CONSTITUTES—EVIDENCE.

H. owned a half interest in certain land on which there were certain mortgages which he was anxious to remove. He made a written contract with defendant J., by which the latter agreed to pay the costs of a pending foreclosure suit and certain interest, and make other advances if necessary; and it was agreed that so much of the land as might be required should be sold, and after reimbursing J. for his ad-

vances, with interest, J. was to have one-fourth of the balance of the proceeds. Both parties were to act together in making the sales. The contract recited that "for the purpose of securing the same" (reimbursement) to J. the said H. "hereby assigns and transfers" to J. the undivided half of ·H.'s interest. In pursuance of the agreement, several parcels of the land were sold, and one-fourth of the proceeds, amounting to much more than his advances and interest, paid over to J. An action was brought by purchasers from the heirs of H. to have the contract (which had been recorded as a deed) declared satisfied and canceled as a cloud on their title. *Held* that, as there was no ambiguity in the terms of the contract, evidence was not admissible to show the interpretation which H. had put upon it by stating to third persons that J. had "an interest" in the land.

2. SAME—ACTION TO REDEEM—PLEADING—AMENDMENT.

It was error not to allow an amendment of the complaint on the trial so as to permit plaintiffs to redeem the land purchased by them upon paying to defendant J. one-fourth of the purchase price, and upon such payment to have the contract declared satisfied and discharged.

3. SAME—EVIDENCE.

It was also error to exclude plaintiff's testimony tending to show that their purchase was for the full value of the land, as such evidence would tend to prove that they were purchasers in good faith.

Appeal from special term, Erie county.

Action by Nicholas C. Newerf and another against Thomas A. Jebb and another. Plaintiffs appeal from a judgment dismissing the complaint, and also from an order denying their application to amend the complaint to conform to the proof. The action was based upon a written agreement made June 9, 1881, between George Humphreys and defendant Jebb. This agreement recites the fact that Humphreys is the owner of the equity of redemption in the undivided one-half part of the land and premises particularly described in the agreement, containing about 180 acres of land, the other half thereof being owned by the children of the said Humphreys, who acquired their interest by inheritance from their mother, the wife of George Humphreys. The agreement then recites the incumbrances upon the premises of $23,000, being mortgages, taxes, interest, and costs. Humphreys was desirous of selling the land, or enough thereof to pay off the mortgages and other liens. The agreement then continues: "Now this agreement witnesseth that the said Thomas A. Jebb, in consideration of the premises hereinafter mentioned, hath covenanted, and hereby does covenant and agree, to and with said Humphreys, that he will furnish money to pay the costs now accrued by the foreclosure of said mortgages, to be repaid to him, with interest, out of the proceeds of the first sale of said lands, and will, if necessary, advance money to pay the interest hereafter to accrue upon said two mortgages, for the period of two years from the date hereof, provided that the payment of said interest shall be demanded and insisted upon by the holder of said mortgages, which advance shall be repaid to said Jebb, with interest from the time of payment, out of the proceeds of the sale of said land, after the payment of said mortgages, and the interest and taxes now accrued, with said costs, and after said Jebb shall have received the one-fourth part to be received by him, as hereinafter provided; and that he will aid said Humphreys in the sale of said land, and use all reasonable endeavors to effect such sale; and the said George Humphreys, on his part, hath covenanted, and does hereby covenant, with said Jebb, in consideration of the covenants of said Jebb, hereinbefore stated, that he will use every endeavor to sell said land in order to pay off said incumbrances, and distribute the surplus; and whenever a sale is agreed to by him and said Jebb to make title to the purchaser of the land so agreed to be sold, and that out of the proceeds of the sale of all of said land, after the payment of said mortgages and the interest now accrued thereon, and all liens for taxes now existing, and after the repayment to said Jebb of said money advanced for costs aforesaid, that the said Jebb shall receive a one-fourth part of the remainder of the proceeds of the sale of all of said lands, and in addition thereto all sums advanced to pay the interest as aforesaid, with in-

terest thereon as aforesaid; and, for the purpose of securing the same to said Jebb, the said George Humphreys hereby assigns and transfers to said Jebb the undivided half of his undivided half of said equity of redemption in all said lands. And the said parties mutually covenant and agree, to and with each other, that all reasonable efforts shall be made by each.to sell said lands, or so much thereof as shall be necessary for said purposes, for the purpose of paying off said mortgages upon said premises as soon as shall be practicable, and as shall be consistent with the interests of the said parties. And the said George Humphreys covenants that he will procure all taxes and assessments assessed or levied on said land, or any part thereof, after the date hereof, to be paid."

*Henry H. Seymour*, for appellants.    *Spencer Clinton*, for respondents.

MACOMBER, J. The agreement, the material parts of which are stated above, was recorded as a deed shortly after its execution. In pursuance of the terms of the agreement, certain portions of the land described in it were sold, and the conveyances thereof made by George Humphreys; the defendant Jebb receiving in each instance one-fourth of the purchase money thereof. This continued up to the month of June, 1885, when George Humphreys died. The plaintiffs are the purchasers from the heirs at law of George Humphreys, and from the other part owners, for the sum of $43,000 of the lands described in the contract, remaining unsold to other parties, consisting of about 127 acres. The complaint proceeds upon the assumption that all beneficial interest of the defendants in such contract had ceased, either by tacit agreement between the parties thereto, or by the death of George Humphreys, and it accordingly asks that the paper, which appears on the record to give the defendant a certain interest in the lands described, be declared to be satisfied, and the same be removed as a cloud upon the title of the plaintiffs' lands.

The construction of the contract in question is not difficult, although many interesting questions arise in regard to the rights of the parties based thereon. It is plain, from the terms thereof, that George Humphreys, being the owner in part of the lands, and being pressed sorely by creditors, desired to obtain from the defendant pecuniary aid in his financial distress, and that he was willing to, and did actually, agree to pay for such assistance extraordinary compensation. It was thereupon agreed that both parties should use their best endeavors to effect the sale of enough of the incumbered property to pay the indebtedness which was then pressing upon the debtor, and that Jebb should advance the money therefor; and he was not only to be repaid for such advances, with interest, but was to receive one-fourth of the proceeds of the sales of any of the land over and above such incumbrances so paid off by him, Humphreys covenanting that he would use his best endeavors to sell the land for the purpose of paying off the incumbrances, and to distribute the surplus in accordance with the agreement, and make a good title to the purchaser; both agreeing to make all reasonable efforts to sell the lands for the purpose of clearing off the incumbrances thereon. Such being the purpose of the parties, and such their mutual covenants, the contract provides "that for the purpose of securing the same to said Jebb, the said George Humphreys hereby assigns and transfers to said Jebb the undivided half of his undivided half of his said equity of redemption in all said lands."

The principal legal question involved turns upon this clause of the agreement. Its terms, however, do not seem to be obscure. The plain reading of it is to secure the defendant the advances of money which he should make to clear off the incumbrances on the land, and compensation for his efforts to secure purchasers. He was to have, as security, an equitable lien upon the property of George Humphreys, for one-fourth of the proceeds of the sales thereof, without limitation of time, when the same should be made. The

learned judge at the trial, however, has found that it was the intent of the parties, by this agreement, to give to the defendant Jebb the legal title to one-fourth of the lands described. In the absence of ambiguity, which does not appear to exist in this instance, resort to testimony for the construction of a contract is not permissible; but the defendant was allowed to call sundry witnesses, principally Mr. Rogers and Mr. Locke, for the purpose of showing that George Humphreys had said, some time before his death, that the defendant Jebb owned one-fourth of the real estate described in this contract. This testimony, in the absence of anything in the case showing that the defendant had had or claimed any title different from the contract upon which he relies, was inadmissible. If it had appeared, directly or inferentially, that the defendant's claim of title rested upon any other paper, or upon any other facts than those disclosed in the agreement, the testimony of these and other witnesses would be of importance, not by way of aiding in the interpretation of the terms of this agreement, which require no interpretation, but by way of showing that the apparent ownership of George Humphreys was shared by the defendant. Yet all of these witnesses, with one or two exceptions, who were called to give testimony upon this branch of the case, substantially say, upon cross-examination, that they are by no means certain that the admissions made by George Humphreys were that the defendant had the title to one-fourth of the property, rather than that he had an interest in the proceeds of one-fourth thereof. It would be unsafe, in view of the plainness of the contract, to permit evidence *aliunde* to be adduced which would show the interpretation thereof by either party thereto, while the other party had not been misled thereby to his prejudice. It would not be unnatural for a person, familiar with the provisions of this agreement, to say that the defendant had an interest in one-fourth of the land, and so asserting he would undoubtedly convey the impression that that interest was a legal title. This construction of the agreement is adverse to the conclusion of the learned trial judge; and this would necessarily lead to a new trial, unless the plaintiffs, by their complaint, have precluded themselves from obtaining appropriate relief in this action upon the contract, as we construe it. The complaint was filed, it is true, upon the assumption that the paper writing, which was uniformly construed by the defendant to be a legal title to the real estate, had become inoperative by the acts of the parties, and by the death of George Humphreys; yet, at the close of the evidence, after all the facts pertaining to the relations of the parties had been given, the counsel for the plaintiffs asked leave to amend the complaint by inserting appropriate allegations looking to relief by redeeming the lands from the lien created by the contract. This application was denied. The reasons therefor do not appear in the case. This proposed amendment of the complaint, to conform it to the evidence, should, we think, have been granted. While there was no ambiguity in the language of the agreement itself which requires construction or interpretation, much uncertainty had arisen in the practical conduct of the business contemplated by the agreement. For instance, it could not well be known by the plaintiffs or their grantors whether the defendant Jebb, who certainly had been fully paid for all advances of money which he had made, and the interest thereon, and several thousand dollars in addition, would claim any further rights in the premises.

There existed, also, the further question, whether or not the defendant's interest in the lands had not ceased with the death of George Humphreys, for the reason that the just claim to a fourth of the proceeds of the sales was dependent upon his personal exertions to procure such sales. While we think that the contention of the learned counsel for the plaintiffs in this respect is not altogether sound, there was enough in the case to warrant him in the outset, probably, in framing the complaint in the manner above mentioned. The question, therefore, is whether, with all the parties before the court who could

have any interest in the relief sought, the trial court should not have ordered an amendment, so as to permit the plaintiffs to redeem the property so purchased by them upon paying to the defendant one-fourth of the purchase price thereof, and upon such payment to declare the agreement, which was recorded as a deed, to be satisfied and discharged. The plaintiffs, though informed in a general way of the existence of the agreement as a matter of fact, and informed absolutely of it as a matter of record, could nevertheless become purchasers of the land in good faith upon paying therefor a reasonable purchase price. It cannot be held that they were not purchasers in good faith. So far as the evidence shows, the price paid seems to have been adequate. They had as good a right to purchase the premises with this lien existing thereon as any person would have to buy premises that were mortgaged of record. There is nothing in the case which precludes them from ascertaining the full extent or the limitation of the lien of the defendant, and, by satisfying the same, to remove it as an incumbrance upon their lands, in the same way in which they would be permitted to maintain an action to redeem land from the incumbrance of a mortgage when the amount unpaid on the incumbrance is in dispute.

It is argued by the learned counsel for the defendants that the proposed amendment would make such a change in the complaint as to substitute an entirely different cause of action for the one originally existing. This contention, however, is not satisfactory to us. The same written agreement is the basis of both grounds for relief, and the same parties are before the court.

Why, therefore, it may be properly asked, should we affirm a judgment to dismiss the complaint absolutely, and yet permit the plaintiffs to begin a new action, based upon suitable allegations, followed by a prayer for the redemption of the lands upon paying what is due the defendant thereon? Under this head it is not necessary to refer to many cases. One will suffice,—the case of *Beach* v. *Cooke*, 28 N. Y. 533, where the court say: "It is next insisted on the part of the defendant that no case was made by the plaintiff entitling him to equitable relief; that the only appropriate judgment upon the facts, as finally established, was that directed by the referee, dismissing the complaint, and leaving the defendant at liberty to commence an action to foreclose her mortgage, if she saw fit. The plaintiff stated in his complaint that he was the owner of lands incumbered, as appeared by the records in the county clerk's office, by a mortgage of $52,000, and many years' interest; that the mortgage was held by the defendant, and was fully paid; and he prayed to have it discharged upon the records. By her answer, the defendant claimed that there was due to her upon the mortgage $10,000, and interest from 1839. After a very tedious trial, lasting more than five years, it is established by the report of the referee that the statements of the plaintiff were all true, except that a small sum, less than $1,300, besides interest, remained due on the mortgage. It would certainly be a cause of reproach to the administration of justice if, on that state of facts, the court could give no judgment except to dismiss the action, leaving the parties to repeat the same tedious process, in another forum, before the controversy between them could be ended. The law, however, is not justly subject to any such reproach. Regarding this as an action *quia timet* merely, to remove the cloud of the mortgage from the plaintiff's title, upon the allegation that the mortgage was fully paid, it was entirely proper, when it appeared by the evidence that a balance remained unpaid, to grant the relief demanded by the plaintiff, conditionally, as was done by the court below."

On the whole, therefore, we are of the opinion that the case as made by the plaintiffs, under their prayer for general relief, entitled them to redeem the lands from the lien created by the instrument in question. There is clearly nothing inequitable in it. All the parties interested therein are before the court, and formally to dismiss the complaint, and relegate the plaintiffs to a

new action to redeem from a lien in which a tender of payment is never required as a condition precedent to the maintenance thereof, would be something which was not contemplated by the liberal provisions of our procedure relating to amendments.

It was also error to exclude the testimony of the plaintiffs, which was designed to show that the sum paid was the full value of the property. The question was doubtless open to some technical objection, such as being leading, but such objections were not specified, nor was any ground of objection thereto distinctly raised. It was competent, and probably material, for the plaintiffs to show that they bought the property in good faith, and one of the elements entering into such good faith, and indissolubly connected therewith, is the amount of money paid for the property. The judgment should be reversed, and a new trial granted, with costs to the appellants to abide the event. All concur.